CITY OF NEW YORK v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. May 15, 1908.)

1. STREET RAILROADS—FRANCHISES—CONSTRUCTION.
   The grant of a right to construct and operate a street railroad must be construed most favorably to the public.

2. SAME—LICENSES—AMOUNT OF FEES.
   A grant of a right to operate a street railroad, conditioned that the "cars shall be licensed by the mayor and the grantees shall pay the annual fee of $20 per car for such license," requires payment for each car operated over the line, and not merely for the greatest number in daily use during the busiest season of each year, and the city is not estopped from demanding such payment because for several successive years the fiscal officers accepted a lesser amount than the contract called for; the contract being too clear for the application of the rule of practical construction.

3. ACCORD AND SATISFACTION—PAYMENT NOT CONSTITUTING LICENSE FEES.
   A street railway company being bound to pay a city an annual license fee for each car operated over its line, there was no accord and satisfaction of the city's right to such payment through payment by the company of part of the fees in a year according to its own estimate of the number of cars it was to run that year.

Appeal from Trial Term.

Action by the city of New York against the New York City Railway Company. From a judgment for defendant on a verdict directed by the court, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Terence Farley (Theodore Connoly and Frank B. Pierce, on the brief), for appellant.

Joseph P. Cotton, Jr. (Robert H. Neilson, on the brief), for respondent.

LAUGHLIN, J. This is an action to recover license fees for the cars run over that part of its line formerly owned and operated by the Ninth Avenue Railroad Company during the years 1902, 1903, 1904, and 1905. It appears by the record that on the 20th day of December, 1852, the board of assistants of the city of New York by resolution granted to three individuals the right to construct railroad tracks in and along certain streets, and to operate cars thereon for the conveyance of passengers for hire, upon certain conditions, and, among others, one as follows, to wit:

"Provided, that the said cars shall be licensed by the mayor, and the grantees shall pay the annual fee of twenty dollars per car for such license."

This action of the board of assistants was adopted by the board of aldermen on the 5th day of January, 1853, but was vetoed by the mayor on the 12th day of the same month. It was, however, duly passed over the veto of the mayor by the board of aldermen on the 14th day of November, 1853, and by the board of assistants on the 28th day of December thereafter. The road was constructed in part, and the grant was thereafter ratified and confirmed by section 3, c. 140, p. 324, of the Laws of 1854. The grant was assigned to the Ninth Avenue Rail-

road Company, which was incorporated on the 29th day of July, 1859, which on the 12th day of March, 1892, leased the line to the Houston, West Street & Pavonia Ferry Railroad Company for a term of 99 years.   On the 12th of December, 1893, the lessee, with other companies, was consolidated into and merged with the Metropolitan Street Railway Company, which on the 14th day of February, 1902, leased its lines to the Interurban Street Railway Company, whose corporate name was duly changed to the New York City Railway Company, the defendant, on the 2d day of January, 1904.   Since that date the defendant has managed and operated this line of railroad, and it is not questioned but that it is liable for the license fees imposed by the original grant.

The question presented by the appeal is, what is the proper construction of the clause of the grant herein quoted?   It appears that defendant paid for cars operated over this line during the year 1902 the sum of $600 as license fees, which was for 30 cars, in accordance with a report which it made to the plaintiff, upon a blank furnished by the city, showing 30 cars to be the "greatest number of cars intended to be run or operated at any time" during the year 1902 over the franchise of the Ninth Avenue Railroad Company.   Upon the trial the parties formally stipulated facts "for the purposes of this action," among which were that the defendant ran and operated over this line 75 cars in the year 1902, 125 cars in the year 1903, 125 cars in the year 1904, and 121 cars in the year 1905, and that the greatest number of cars in daily use by the defendant at the busiest season of the year 1902 was 43, of the year 1903, 70, of the year 1904, 75, and of the year 1905, 70.   The precise question presented for decision is whether the grant requires the defendant to pay for each car run and operated over the line, or only for the greatest number in daily use during the busiest season of each year.   The defendant showed that prior to the year 1902 the basis upon which license fees had been paid for cars operated over the franchise of the Ninth Avenue Railroad Company was the greatest number of cars in daily use at the busiest seasons of the various years. Upon this evidence it claims that there was a practical construction of the contract obligation to pay license fees upon which it is entitled to rely, and which estops the city from demanding the construction for which it now contends.

The grant is to be construed most favorably to the public.   Mayor v. Dry Dock, E. B. & B. R. Co., 47 Hun, 199, affirmed 112 N. Y. 137, 19 N. E. 420.   The rule of practical construction, applied in some cases to determine the intent of the Legislature and to contracts, should not, I think, be applied in the case at bar.   Here the contract was not construed by the party, but by its fiscal officers, in accepting from a corporation less than the amount of license fees to which the city was clearly entitled, and the terms of the contract were not ambiguous or open to the construction adopted.   The city clearly reserved the right to license each car, and clearly imposed upon the acceptors of the grant the duty of paying the license fee for each and every car used on the line.   The taxpayers of the municipality should not be deemed estopped for all time from collecting the license fees clearly reserved to them by a grant of this character merely because the fiscal officer for

one year, or during successive years, accepted from them without question less license fees than the amount reserved in unambiguous terms in the grant. As we view the contract, it is too plain and clear for the application of the rule of practical construction. The defendant and its predecessor in title are doubtless protected by the statute of limitations against the enforcement of any liability for unpaid license fees which became payable more than six years prior to the commencement, of the action. Upon each successive comptroller, however, devolves the duty of collecting the license fees to which the city is entitled ununder this grant. The conditional grant being clear and unambiguous, the duty of the comptroller and the right of the city cannot be affected by the acceptance by former comptrollers of a smaller amount than that which the city was entitled to receive.

There can be no accord and satisfaction arising upon the payment by the defendant of part of the license fees in the year 1902, according to its own estimate of the number of cars it was to run that year. It was clearly the duty of the defendant to pay the amount which it did pay. There does not appear to have been any dispute or controversy over the amount. The grant express requires a license for each car, and not a certain number of licenses to be issued to the defendant. The subject of the license is the car to be run over the line. By the terms of the grant the defendant had no right to run a car over the line without first obtaining for that car a license. The formality of obtaining the license may have been waived; but, if so, that does not relieve the defendant from its contract obligations to pay the license fees. It would seem, since the facts are stipulated for the purposes of this action, that in reversing the judgment we might direct judgment in favor of the plaintiff; but, as that relief is not asked by the learned counsel for the plaintiff, it is possible that the stipulation may be modified, or that the facts may be changed upon a new trial.

The judgment is therefore reversed, and a new trial granted, with costs to appellant to abide the event. All concur.